DRIVER *v.* KELLEY.

4-9910                                                252 S. W. 2d 809

Opinion delivered December 1, 1952.

*Bob Bailey* and *Bob Bailey, Jr.,* for appellant.

*Chas. L. Farish* and *John G. Moore,* for appellee.

GRIFFIN SMITH, Chief Justice. The issue is whether a deed executed by father and mother to their daughter—an only child—should be cancelled, modified, or sustained in its entirety. It is also insisted that $1,600 in cash, or that portion not expended for the benefit of father and mother, should be returned by the daughter. The land aggregate is 78.5 acres.

John Kelley, 71 years of age at trial, is unable to read or write. Because of these handicaps his wife, Emma, looked after domestic matters requiring some degree of education. It is in evidence that Kelley could not count money when the amount was large, therefore Mrs. Kelley received payments intended for their mutual benefit, and family bills were paid by her. The couple had accumulated the $1,600 mentioned in the complaint and

its keeping and incidental expenditures from it were entrusted to Mrs. Kelley.

On October 24th, 1949, Mr. and Mrs. Kelley went to Charles Eddy, a notary public who had known them for more than a quarter of a century, and asked him to prepare the deed. In the suit for cancellation resulting in this appeal Kelley alleged that he was under the influence of his wife, that he did not want to part with the property, but finally consented that the deed be prepared when it was explained to him that effectiveness depended upon delivery—a transaction he vigorously denied with intimation that the daughter, Dorothy Driver, took the instrument from a trunk and had it recorded, and in some manner it was returned. The recited consideration was $1, and love and affection.

Mrs. Kelley died June 16, 1951, and shortly thereafter Kelley, while handling other papers, observed writing on the deed. He explained that, although he could not read, he recognized that the "recorded part of the deed" had been filled out. Efforts to induce Mrs. Driver to reconvey that property were unavailing and this suit followed.

Intimations in the brief are that the Kelleys executed the conveyance in order to qualify for state relief payments. They did not live on the land, but occupied a home on thirteen acres nearby. Mrs. Kelley had been in poor health for eight or ten years and had been hospitalized several times. Shortly before her final illness an argument arose regarding the accumulation of money ($1,600). There is testimony that Kelley refused to send his wife to the hospital unless the money were given to him. Mrs. Driver admitted having it, but instead of giving the containers to her father she pinned them to her mother's underclothing. After Mrs. Kelley's death Mrs. Driver turned over to her father $679.47 that remained after necessary bills had been paid. Included in proven payments was $450 to Dr. Linton.

The trial court was correct in finding that Mrs. Driver had accounted for the money.

We are not persuaded that Kelley was mentally incompetent, or that his wife's over-persuasion was an influence that should militate against the grantee. Neither do we accept the argument made by Kelley's counsel that no burden could attach to Mrs. Driver's action in deeding the land back to her father because, being an only child, ". . . she would thus have inherited the lands in a few years". In the meantime, of course, the grantee could otherwise dispose of the estate and proceeds.

There is evidence that the Kelleys, after execution of the deed, mentioned the fact that the land had been conveyed to their daughter.

Allen Driver, Kelley's son-in-law, testified that the grantors brought the deed to his home, told his wife it should be recorded and [assessments] changed on the tax books. Driver then effectuated recordatory details, brought the deed back, and later gave it to Kelley.

Dorothy Driver testified that she loved her father, "and I will do anything I can to help him. He can have the use of the land during his lifetime, although there is nothing whatever in the deed about it". She disclaimed any responsibility for the action of her father and mother in executing the deed, and emphatically denied spending any of the $1,600 for personal purposes. The grantors, she said, brought the deed to her and asked that it be recorded and assessments changed in such a way as to show who the true owner was, to the end that confusion in tax payments would not arise.

Since preponderating testimony does not disclose mental incapacity, undue influence, or an agreement by the grantee to maintain her father in consideration that she receive the land, the true status appears to be that Kelley has changed his mind. There is no delineation of title, hence the actual legal or equitable interest of Mrs. Kelley does not appear, although inferentially title was in Kelley and his wife's interest was dower and homestead unless the actual homestead attached exclusively to the thirteen-acre tract.

The deed, *prima facie,* was the grant of John and Emma Kelley. In the absence of evidence to the contrary we must assume that Mrs. Kelley's interest was proprietary; hence when she and her husband made the conveyance and when the deed was delivered, title vested in their daughter.

In her answer to John Kelley's complaint, Mrs. Driver said: "Defendant further states, without binding herself for any specific amount, that if her father, the plaintiff herein, was in need, that she would assist him in every way possible". The trial court seems to have treated this statement as having some bearing on the original grant, but since there is insufficient testimony of a competent character to show that Mrs. Driver, in 1949, consented to anything not expressed in the deed, we think Mrs. Kelley's wishes become of controlling importance.

Anything alien to the deed's provisions should not be judicially imposed upon the grantee because one party to the transaction now has a different conception of intent. Nor can Mrs. Driver's pleading be regarded as anything more than a moral obligation to assist her father to the extent of her ability when necessity arises.

Mrs. Driver's assurance in open court that she was willing for her father to have the land for life is different from the indefinite promise of support. Entity and the imposition of a life estate in Kelley's favor through the implied (if not wholly expressed) consent of Mrs. Driver present no practical difficulties. So we modify by vesting the fee in Mrs. Driver, subject to a life estate in her father. In other respects the decree is affirmed.